Thank you, I do not see the lawyers visually on my screen. So we'll need Mr. Morris and Ms. Gustafson added to There we are. Before we begin, there are several cases that are submitted on the briefs at this time. Hassan v. Garland, Anbassi v. Garland, Medina Melendez v. Garland, Estakrian v. Obenstein, and Williams v. Pollard. And I also just want to remind counsel that when you're not speaking, if you would mute yourselves, that's helpful. And just remember to unmute yourselves. And also for appellants, the time on the clock represents your entire time. With that, we'll hear argument in Shelton v. County of San Bernardino. Good morning, Your Honors. Christopher Morris on behalf of appellant and plaintiff Jason Shelton. I'd like to reserve two minutes for my rebuttal if I may. Thank you. May it please the court. Your Honors, this case really, pursuant to the court's notice last week, was that we focused our remarks on the excessive force claim. But in order to get to that excessive force claim, you have to have a named deputy. And in this case, the named deputy was attempted to be added by us late in the game. And by all accounts, Rule 16 applies because a scheduling order has been placed. Under Rule 16, our diligence is measured under the standard of due diligence. But in none of the cases, Your Honors, that are cited by appellees, was that due diligence necessitated by the dilatory and delay and non-compliant tactics of the defendants. And in this case, our diligence should be measured in that context. It shouldn't be looked at in a vacuum. It should be looked at in response to the delay and dilatory tactics of the county. Counsel, did you ever ask the court to adjust or amend its scheduling order? We did late, yes. So, like, by seeking the amendment after the summary judgment motion has been filed, that's the only effort that you made to try to get the scheduling order changed? It is. And why didn't you do that sooner? We didn't do that sooner, Your Honors, because we were going to do one motion to amend. We needed to do one motion to amend. And that motion really depended on whether or not we were going to name both deputies. And so we had to take the depositions of both deputies, or at least the deputies that amended the main act order, to see if we were part and parcel of the whole problem. I mean, I understand that. But the problem here is that you were seven months or something after the deadline to amend. And if you knew that you wanted to take discovery, you could have gone to the court and said, here's what's going on in this case. Here's what I'm facing with how the defendants are reacting to my discovery requests. And I asked the court to adjust its schedule. But you didn't do that. No, Your Honor. You hit the nail on the head with that. So is our diligence measured against the delay and dilatory tactics and noncompliance of the defendants? Oh, you should have done this when they stonewalled your discovery. You should have done this when they failed to comply. I think we understand your position on that. And if my colleagues will permit, I'd like to ask a slightly different question. I want you to assume for the sake of this question that the court did not make a mistake in disallowing the amendment to name Detective Hamilton. And I want you to further assume that we would find a genuine issue of fact as to whether Detective Hamilton used excessive force. In that circumstance, what is the result with respect to the county as the defendant? I think the county would still be a defendant in the Bain Act claim. The Bain Act claim would still leave the county as a defendant there. There is no Monell or policy claim against the county. But the county would still be a defendant as to the Bain Act claim. So why wasn't, since we asked you to focus on the excessive force, why wasn't the officer's use of force reasonable given that Shelton was running after him holding an object in his hand? Very well. So under Graham v. Conner, we look at the totality of the circumstances. So in this case, you have to look at what exactly happened leading up to that. So you've got the officers doing whirlies, doing circles around this guy's house. Then you've got them attempting, at least attempting to break the curtilage and go into his yard. And when he sees them, they run away in plain clothes in an unmarked car. And he delays his pursuit and gets out with a phone, no shirt, shorts, phone, and recording them saying, I have you recorded, I have you recorded. And as he approaches, now some 30 seconds delayed, the officer gets out and points a gun at him. Well, counsel, I'm going to stop you right there. So your complaint does not allege that the gun was pointed at him. The complaint only alleges that the gun was unholstered or brandished. No, it alleges pointed. So tell me what paragraph it says that, because I've read your complaint and I don't see it. It's going to take me a minute to find it. Can I do that on rebuttal? I don't want to waste all my time. All right. So then that's fine. You can find that and then bring it to our attention on rebuttal. My next question is, I understand that your client has now asserted in the context of summary judgment that the gun was pointed at him. We also have a video here. If we watch the video and conclude there's no way that that happened, we don't have to accept his assertion that it did, right? That's true. That's true. The video overrides any contrary testimony. But in this case, the testimony and his declarations and the testimony of the summary judgment was that the gun was pointed at him and for a millisecond, but pointed at him at a time when it was clear that he only had a camera. And even if we take the gun pointing out, we've got him with a gun on his hand, walking him back. You know, I mean, really acting in a very aggressive manner towards somebody who had no idea these guys were police officers. Well, OK, but let's rather than talking in generalities, let's we give you all inferences in your favor because of where we are. At what point exactly did the officer draw his gun and point it at Shelton? If we give you all inferences to admissible evidence, what does that what does it show in the record? Not what you want it to show. What does it show in the record? The record is, your honor, that he was as he approached the position in his declaration, as he approached, he got within eight seconds. The officer initially, as he got out of his car, unholstered his gun and pointed it just for a brief second, a millisecond, according to Shelton, and then put it back in his holster. So as you were saying, Shelton was about eight to 10 feet away from the officers approaching. The officer was in the back seat of his car, got out and pointed it, unholstered it, and put it back in his holster. And that's the excessive force. I mean, putting a gun is excessive force. And then is that when, according to your client's rendition, is that when he was coming around the back of the pickup with an object in his hand? He was coming towards the back of the pickup with a camera in his hand. Well, okay, but it's a camera. Okay, so we know it's a camera. It's an iPhone. So at what point did the officers identify themselves as officers? It was after that, correct? Didn't the officer pull his badge out or something from under his Punisher shirt or something like that? After the pointing. Okay. Counsel, did you wish to reserve your last two minutes? I do, Your Honor. Thank you. And we'll hear from Ms. Gustafson. Good morning, Your Honor. Shannon Gustafson for Defendant Appelli County of San Bernardino. Counsel, let me ask you, start by asking the same question I asked opposing counsel. I want you to assume for this purpose that the court was correct in disallowing the amendment so that the county is the only defendant. And I want you to assume that there is a genuine issue of material fact on excessive force. Do you agree or disagree with the assertion that the Bain Act claim would survive in that circumstance? I believe the Bain Act claim and the assault claim would still be viable under those circumstances. Okay. And I want to ask you about the affidavit from Scott Hamilton. It strikes me as so carefully worded to avoid saying anything that would be supportive of the use of a weapon. For example, it never says that the object that he thought it might be a weapon. He never says that. He simply says he had a black object and I was not able to immediately identify the object. So he never says he felt threatened. He never says he thought it was a weapon. And even though he says he was not able to immediately identify it, he never says that he was unable to identify it before unholstering his weapon and, as the plaintiff says, aiming it at him for a millisecond. And in that circumstance, why don't we have to take plaintiff at his word that this weapon was pointed at him, even though the officer may well have known by that point that it was just a cell phone attempting to record what was happening? The struggle that we had here as the defendants, Your Honor, is Deputy Hamilton's testimony is that he never raised his weapon at the plaintiff. However, we understand for summary judgment that we have to take the plaintiff's word coupled with the video. And therefore, the plaintiff has argued that the weapon was raised up for that millisecond. The deputy in his declaration could not say he raised up his gun because that would be false under his... No, but he doesn't say anything about when in this episode he was able to identify the object as a cell phone. So it wasn't immediate, but it could have been half a second after the plaintiff began to run towards him. This is my problem. You know, typically in these cases, the deputy will say something like, I couldn't identify the object, but I was concerned for my safety because in the circumstances I thought it might be a weapon. There's nothing like that in here. And so it seems to me that a fair reading of it is that it's consistent with the plaintiff's statement that by the time the officer unholstered his weapon and, you know, allegedly pointed it at him briefly, the deputy did know that it was a cell phone. Because when he says, I wasn't able to identify it immediately, that necessarily suggests that at some point after immediately he was able to identify it. I think even if you take the plaintiff's testimony and compare it with the video, the only point in time where the deputy could have possibly raised this firearm is still the point in time where plaintiff is still charging and running aggressively full force towards the officer. It could have occurred after the video stopped because that's part of what the plaintiff is saying, that he's going to raise his cell phone camera and take a picture of it, but it was too late to get a picture of the raising of the gun. Now, again, a jury doesn't have to believe that, but it doesn't seem to me that his testimony is necessarily inconsistent with either the video or the complaint. The testimony was that when the gun was pulled, and this is the deposition testimony, and I believe it's in the record, plaintiff was six to 15 feet away on the opposite side of the truck on the driver's side. So this is the point in time in the video when he's still running. I think when you combine his testimony with the video, there's only one point in time where the weapon could have allegedly been pointed at him, and it's not the point in time where plaintiff is already on the other side of the car in clear view with his cell phone. Well, okay, I'm kind of understanding your factual issue here. Let's just say that we're evaluating it for purposes here, that we have to take as true that it was pointed at him for a millisecond. All right, then we look at the officer's testimony, and what Judge Graber is saying is he doesn't say subjectively, I feared for my life. Now, but when we review it, it's what an objective officer, what an objective officer would be, because there are instances where a deputy will say, I was afraid for my life, but we look at it and we say, well, a reasonable officer would not have been. All right, let's assume here that he wasn't afraid for his life, but a reasonable officer could have been. What do we do with that? I think that's what, since he didn't say one way or the other. Obviously, under the Graham standard, it is an objective standard, and the state law has indicated that when the issue is excessive force, they're going to use the same standard that's used in the Section 1983 cases. And I think an objectively reasonable officer turning around and seeing this individual running in the manner that Mr. Shelton did, yelling, being aggressive, something in his hand, is going to have that initial reaction until that can be. My problem is actually slightly before that, because he never says he thought it was a weapon. He never, he simply, so here's my question to you. If the officer actually knew that it was a cell phone, would pointing a gun be excessive force? I don't think in these circumstances it would be, even if he knew it was a cell phone, given the manner that plaintiff was coming at him. So if I'm in my gym clothes and I'm holding a cell phone, you think it's okay for the police at my home to point a gun at me and that that's not excessive force? If you're standing there simply holding a cell phone with no other factors, no, that would be excessive. So I'm running with a cell phone. Why does that justify, as a matter of law, why would that justify pointing a gun at me? It's the manner that he's coming at him, coupled with being the plainclothes officer, the only weapon he has available is his firearm. He has nothing else on his purse. But why would he be justified at all in brandishing any kind of weapon or making any kind of threat if the only thing that a person is holding is a cell phone with which they are recording the activity that's happening? At least as a matter of law. You're saying that the deputy is justified as a matter of law because he doesn't have any lesser weapon, and if he knew it was a cell phone at the time he pointed a gun, you think that that is, as a matter of law, permissible? Assuming that he knew it was a cell phone, and given the way plaintiff is charging at him, yes. If plaintiff's just standing there with a cell phone and he can clearly see it's a cell phone and plaintiff's imposing no kind of threat, then no, I would agree that would be excessive force. And you don't think a jury could find that it's excessive force, even though he's running in his flip-flops towards the person? I don't believe under these circumstances that a jury would find that it's excessive force. Not that they would. Could they, permissibly, under the law? Not in the manner that... It's a summary judgment. And that's, again, assuming that he knew it was a cell phone. I still think the manner that plaintiff is coming at him, and given it's a brief second, okay, I see what this is, I'm going to keep the gun down. Under those set of circumstances as we see in the video. You're saying more the tribal issue is whether the gun was up or down, but you're saying, even assuming it was up for a millisecond, because it's undisputed that he was running after the officers and was charging around the corner, that, as a matter of law, it's not excessive force. Am I understanding that correctly? Yes, Your Honor, it's because I have to assume for summary judgment that he pointed the gun based on his testimony. From that point, that split second where you don't see his arm in the video when plaintiff is still on the other side of the truck running. I think that counsel for Mr. Shelton conceded that the video takes precedence over what people say. Is there still room, because of how the video went, to give Mr. Shelton the inference that it was pointed for a millisecond? There is a split second, I guess you could argue. I mean, he'd have to be pointing the gun like this, but I guess we could argue that he did that based on that split second where you don't see his arm. Okay, thank you. Thank you, counsel. And I believe Mr. Morris has a couple of minutes of rebuttal. Just a couple of minutes, and I want to answer the question posed by Judge Forrest. Judge Forrest, you're absolutely right. It was not in the complaint. It's in the declarations and in his deposition. It's in his deposition at 805, Exodus of Record, 805 and 807, where he says when he approached the truck, he had a gun pointed in his face. You're correct. I apologize. So the question really boils down to looking at the totality of the circumstances. I mean, it's not like the officers are in uniform in a marked car on the street and somebody runs up aggressively holding a phone. They had broken the curtilage of his home in plain clothes in an unmarked car and ran. I mean, think about that. When he's confronted, he runs away. What's a reasonable citizen going to do when somebody is coming into their bushes and you say, hey, what's going on? And the guy takes off running. I mean, your immediate normal and reasonable response would be to something nefarious going on. And that's what his assumption was. And I think the officer, a reasonable officer, would have to take into account the totality of the circumstances, meaning, hey, I was just in this guy's house. And when he saw me, he ran away. He's acting aggressively, but he only has a cell phone. And that's the record. That's the declaration that he knew that he realized that was a cell phone. And so when you're pointing a gun at somebody under those circumstances, it is very, I think it is not only likely, but I think it's possible that a jury will find, excuse me, not only possible, but likely a jury will find that that was excessive force. And I think that's the key to this case and why this case really, you know, as a brand new lawyer, I was a domestic violence prosecutor doing nothing but misdemeanors. And they told us we're doing this to stop that behavior early. It's not the case of the century. I totally get it. But it's the behavior that we don't want to account for. It's that behavior you don't want to allow to get worse. And so I think in this case, that application and that analogy is spot on. It's not the case of the century. I totally get it. But this is not behavior we want to sanction. It's not behavior we want to control. And I would ask the court to overturn and allow this case to go forward. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate helpful arguments from both of you.
judges: Graber, Callahan, Forrest